## KNOWLTON and others *v.* MISH and another.

*(Circuit Court, D. California.   April 2, 1883.)*

1. SEPARATE PROPERTY OF WIFE USED BY HUSBAND.
    Where moneys of a married woman are habitually collected and used in his business by the husband for a series or years, and mixed with his property, without any account thereof being kept, thus giving him credit in his business, and there is no specific agreement with his wife for repayment, or that the property purchased with it shall be hers, the moneys so used, and the goods or property so purchased, become his for the purpose of paying his debts.

2. MORTGAGE TO SECURE MONEY OF WIFE—FRAUD ON CREDITORS.
    A mortgage by the husband to secure moneys of the wife so collected and used, kept from the record till after the purchase and receipt of a large amount of goods by the husband and his son, they being at the time largely insolvent, *held* to be fraudulent as to the parties selling the goods.

3. FRAUD—QUESTION OF FACT.
    Fraud is generally a question of fact, to be determined by all the circumstances of the case.

4. WIFE'S SEPARATE PROPERTY.
    A wife, desiring to preserve her rights in her separate property, should take reasonable care to keep it distinct from her husband's business, so that it shall not become the means of practicing fraud upon others.

In Equity.

*David Friedenrich,* for complainants.

*Daniel Titus,* for defendants.

SAWYER, J., (*orally.*)   The bill in this case is brought for the purpose of having appropriated to the payment of debts certain property alleged to have been fraudulently mortgaged and transferred to Mrs. Mish, the wife of one of the defendants.   Without going into them fully, a brief outline of the facts is as follows:   In December, 1879, P. Mish & Son, a firm doing business in San Francisco, in a certain line of merchandise, was manifestly insolvent,—their indebtedness largely exceeding their assets.   In that month P. Mish executed to his wife a mortgage for the sum of $54,000, upon property which was already subject to a mortgage for a large amount, the two mortgages being more than sufficient to absorb the property.   The alleged indebtedness for which this mortgage was given arose from rents and sales of certain separate property of the wife, which had been given to her by her brother so far back as 1863.   For years the husband had been collecting the rents of this property, using the money in his business, and for the support of his family, and for other purposes, and no book-account or memorandum of it was kept by either party.   At the date mentioned, Mr. Mish and his wife figured up the amount which they claim he had received from the income of her property and added a large amount to it as interest, making the total indebtedness $54,000, for which sum the mortgage referred to was executed.   The mortgage was not put on record at the time.   About the time of its execution, the younger Mish left San Francisco for New York, where he purchased for the firm from various parties, upon a

credit of several months,—four months, I believe,—goods to the value of $63,000,—his firm being then undoubtedly insolvent, it being indebted to an amount much larger than the value of all its assets. The goods were purchased during the winter of 1879–80, and immediately shipped to San Francisco. In March, 1880, soon after the arrival at San Francisco of the last of the goods, Mrs. Mish put her mortgage on record. Immediately afterwards a suit was brought on behalf of a relative, a brother-in-law of Mrs. Mish, and the stock in the store of P. Mish & Son attached. The stock was sold under execution in that suit, and Mrs. Mish became the final purchaser; she having in the mean time bought up another judgment against the firm. The consequence was, not one cent of this indebtedness of $63,-000 referred to was ever paid, and these complainants, being among the sufferers, bring this suit to have the property covered by the mortgage to Mrs. Mish appropriated to the payment of their debt. The defense is that this is the separate property of Mrs. Mish. I think no one can read the testimony and the record in this case without being satisfied that these transactions are fraudulent with reference to these creditors. It is not necessary for me to go into a discussion of the subject; it would be unprofitable to do so; but, in my judgment, it is clearly manifest, from the facts and the surrounding circumstances in this case, as to these creditors, that this transaction between Mish and his wife was fraudulent. A great many ear-marks of fraud are apparent. Fraud cannot usually be proved directly. It is a question of fact, to be inferred from the surrounding circumstances. The circumstances in this case, certainly, justify the inference of fraud.

It is highly probable, and for the purposes of this decision I shall assume, that much of this money making up the alleged indebtedness of $54,000 was income from the wife's separate property. But it was collected by the husband, who used it for such purposes as he saw fit,—without any specific agreement in writing, or otherwise, in regard to it,—no accounts or traces of it being kept, and he was not called upon to give any account of it until the time when the mortgage was executed to the wife, under the circumstances named, many years after its collection and use; and the execution of the mortgage was kept secret until after the delivery of the last goods bought in New York by the son. The attachment referred to followed so quickly and under such circumstances as, at least, to suggest a suspicion of co-operation and information on the part of the attaching creditor not possessed by other creditors. I think this point in the case comes clearly within the ruling in the case of *Humes* v. *Scruggs*, 94 U. S. 22–28, where, in the case of such a use of a wife's property as is here shown, under similar circumstances, it was held that there was a dedication of the money on the part of the wife to the general uses of the husband. I think the circumstances in this case show a dedication to the husband by the wife of the income of her property

collected and used by him, so far, at least, as the interests of these creditors are concerned. If married women desire to preserve their rights of property, they should take reasonable care to keep it separate, and in such condition as not to mislead those dealing with their husbands. They should so manage their property, as not to make it an instrument of fraud upon the rights of others. There must, therefore, be a decree for complainant in conformity with the prayer of the bill.